# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0244
Filed April 15, 2026

———————————

**In the Interest of H.V., Minor Child,**

**N.V., Father,**
Appellant,

**K.K., Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Appanoose County,
The Honorable Richelle Mahaffey, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

Jonathan Willier, Centerville, attorney for appellant father.

Sarah Wenke, Ottumwa, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Julie De Vries of De Vries Law Office, PLC, Centerville, attorney and
guardian ad litem for minor child.

———————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

The mother and father separately appeal the termination of their parental rights to a child born in December 2024. We affirm on both appeals because each parent has persistent, unresolved methamphetamine addiction and the danger posed by the father is compounded by untreated anger issues.

## BACKGROUND FACTS AND PROCEEDINGS

Both parents have a history of methamphetamine use. The mother and the child's umbilical cord tested positive for methamphetamine at birth, despite the mother denying use of any illegal substances. The month after the child was born, the Iowa Department of Health and Human Services (HHS) required both the mother and father to complete substance-abuse evaluations, and both tested positive for methamphetamine and amphetamines. Both were recommended to complete residential substance-abuse-treatment programs, but neither did. Instead, both continued to use methamphetamine.

During this time, HHS was repeatedly informed that both parents were violating an agreed-upon safety plan and were spending the night with the child unsupervised. At one point, the parents attempted to flee with the child.

The child was formally removed from parental custody in February 2025. And the child was adjudicated to be in need of assistance. At the time of adjudication, neither parent had made any meaningful progress toward addressing their substance abuse. And, in the juvenile court's review, the same remained true as of the January 2026 termination trial.

Over the life of the case, both parents repeatedly tested positive for methamphetamine, as recently as the month before termination. And they

both no-showed for drug-testing the week before the termination trial. The child was never returned to their custody, with all visits remaining supervised through trial. Any periods of sobriety were short-lived at best.

Independent of the methamphetamine use, the father demonstrated significant anger issues. In 2025, it was reported to HHS that he threw items in the house, yelled, and kicked the family dog. And, as recounted by HHS, during at least one visit the father grew angry with the child and started "calling [the mother] horrible names, saying he was going to divorce her, yelling, throwing his phone at the wall, and so the visit had to be ended at that time." In late 2025, the father said he "was going to kill" some of the mother's relatives, apparently out of belief their continued presence in the couple's residence would risk their housing assistance. At the 2026 termination trial, the father became so "agitated and hostile" (per the juvenile court) that he stormed out of the proceedings "while shouting at the court and other parties." This behavior was so severe the court expressed concern for the mother's safety if she remained with the father. Despite recommendations for mental-health treatment to address his anger and other issues, the father never meaningfully engaged with mental-health services.

In her trial testimony, the mother appeared to concede she could not immediately resume custody of the child and instead asked for more time. She explained that she had not yet engaged with inpatient substance-abuse treatment but planned to do so in the near future. And she agreed on cross-examination that the child's "need for safety today and permanency today outweigh[ed] giving [her] more time."

The child is placed with and bonded to his maternal grandmother, who the juvenile court described as a "loving and nurturing caregiver." The grandmother has expressed that she will allow the parents to have contact

with the child if they are stable and sober. And the court singled the grandmother out in its order to "thank[]" her for offering "consistent love and support" to the mother and the child. As just one example, the record indicates the grandmother bought a trailer so that the parents could stay on her property and visit the child, with the only condition being that the parents remain sober; they were unable to meet that condition.

The county attorney, HHS, and the child's guardian ad litem (GAL) all recommended termination of parental rights. And the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(h) and (*l*) (2025). Each parent separately appeals, and we review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## DISCUSSION

The mother on appeal[1] asserts "[t]ermination of [her] parental rights would be detrimental to the child," citing Iowa Code section 232.116(3)(c). Like the juvenile court, we conclude the mother failed to carry her burden to prove this or any other exception by clear and convincing evidence. Neither a parent's love nor the mere existence of a bond is enough to prevent termination. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). And here, the considerations supporting termination—primarily the hazards posed by the mother's persistent and

---

[1] Appellants must attach the order from which the appeal is taken to their petition. Iowa R. App. P. 6.201(1)(e)(2)(2). The mother did so by printing and scanning it before uploading, and the same is true of her petition on appeal. By printing and scanning, the documents lost some readability and are not text-searchable. Unsearchable documents make our job as a high-volume court harder; we request litigants to please file digital-native documents without printing them out and scanning them back in.

unresolved methamphetamine addiction—easily outweigh preserving whatever bond remains between mother and child.

Both parents also assert the juvenile court should not have terminated their rights because the court could have placed the child in guardianship with the grandmother. We doubt error was preserved on this claim. In closing arguments, both parents asked for additional time. No one mentioned a guardianship at trial, and it's not clear the juvenile court ruled on it. That said, even if we assume without deciding the issue was preserved, the record clearly supports rejecting the parents' claims.

"Importantly, a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (cleaned up). The extent of the mother's argument on appeal is that she wouldn't "undermine" the grandmother because they are on good terms. The father focuses on the grandmother's age, apparently implying she may die before the child is an adult and is therefore a poor permanent placement. We are not persuaded by either of these arguments. While we commend the mother and grandmother for their good relationship, their present cooperation does not change the child's need for long-term stability and safety. As for the father's claim, we think his argument about the grandmother's age is entirely speculative, and there is no evidence in this record of the grandmother's health or anything else that suggests she will not be a suitable caregiver for the foreseeable future.

**AFFIRMED ON BOTH APPEALS.**